## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

YITZHAK SAFRA, *et al.*,      )
                           )

           Plaintiffs,    )
v.                         )    Civil Action No. 1:14-cv-00669 (CKK)
                           )

THE PALESTINIAN AUTHORITY,    )
                           )

           Defendant.    )
_____)

 

## THE PALESTINIAN AUTHORITY'S REPLY
## TO PLAINTIFFS' OPPOSITION TO THE PA'S MOTION TO DISMISS

Laura G. Ferguson (#433648)
Charles F. B. McAleer, Jr. (#388681)
Dawn E. Murphy-Johnson (#490232)
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Suite 900
Washington, D.C. 20005
(202) 626-5800 (telephone)
(202) 626-5801 (facsimile)

*Attorneys for Defendant*
*The Palestinian Authority*

June 23, 2014

1434812.1

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.     THIS LAWSUIT MUST BE DISMISSED BECAUSE THE COURT CANNOT
EXERCISE PERSONAL JURISDICTION OVER THE PA ................................... 2

     A.     Like All Non-Sovereign Foreign Defendants, the PA Has Due Process
Rights ........................................................................................ 2

     B.     Plaintiffs Fail in Their Other Attempts to Distinguish *Daimler* ...................... 5

     C.     Plaintiffs Fail to Make Out a Prima Facie Case for the Exercise of
General Personal Jurisdiction ........................................................... 8

          1.     *Pre-Daimler Personal Jurisdiction Cases Involving the PA and
Decades-Old Contacts with the U.S. Are Irrelevant to This
Court's Exercise of Personal Jurisdiction* ......................................... 8

          2.     *The Contacts Alleged by Plaintiffs Are Not Even PA Contacts* ............ 9

          3.     *In Any Event, the Contacts Alleged by Plaintiffs Do Not Make
Out a Prima Facie Case for the Exercise of General Personal
Jurisdiction* ............................................................................ 10

     D.     The Court Cannot Exercise Specific Personal Jurisdiction Over the PA ......... 12

II.    THE PA'S RULE 12(b)(3) AND RULE 12(b)(5) MOTIONS MUST BE
GRANTED ................................................................................................ 15

III.   PLAINTIFFS' CLAIMS MUST OTHERWISE BE DISMISSED ............................ 16

     A.     Plaintiffs Fail to State a Claim for Relief Under the Anti-Terrorism Act ........ 16

          1.     *The Complaint Fails to Allege a Cognizable Injury to Yisrael
Safra* ................................................................................... 16

          2.     *The Complaint Fails to Adequately Plead an Act of International
Terrorism* ............................................................................. 18

          3.     *The PA Cannot Be Held Vicariously Liable for the Acts of Its
Employees* ............................................................................ 20

i

B.     There is No Civil Liability for Aiding and Abetting Under the ATA .............. 21

C.     Plaintiffs' Remaining Non-Federal Claims Must Be Dismissed ..................... 22

     1.     *Plaintiffs' Battery and Assault Claims Are Time-Barred* ...................... 23

     2.     *Plaintiffs Fail to State a Claim for Negligence Under the Governing Law* ....................................................................... 23

CONCLUSION ........................................................................................... 24

1434812.1

## INTRODUCTION

Like its companion case, *Livnat v. Palestinian Auth.*, No. 14-cv-668 (CKK), this lawsuit has no place in U.S. federal court.  First and foremost, the Court lacks personal jurisdiction over the Palestinian Authority ("PA").  Because the PA is not based in the U.S. and is not even alleged to have a substantial presence here compared to its worldwide activities, Plaintiffs cannot meet the Supreme Court's new "essentially at home" test for general personal jurisdiction.  *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  Plaintiffs' claims do not arise out of the PA's alleged contacts with the United States, so specific personal jurisdiction also is lacking.  *See Walden v. Fiore*, 134 S. Ct. 1115 (2014).  In response to the PA's Rule 12(b)(2) motion, Plaintiffs apply the "continuous and systematic" test for general jurisdiction, even though the Supreme Court squarely rejected that test in *Daimler*, 134 S. Ct. at 760-61.  Plaintiffs also argue that the Court can exercise specific personal jurisdiction because the three of them, all U.S. citizens, were either physically injured or emotionally affected by the PA's alleged conduct.  DE 16, Mem. ("Opp.") at 37.  But earlier this year the Supreme Court held that it is the defendant's contacts with the forum itself – not its contact with forum residents outside the forum – that is necessary for the exercise of personal jurisdiction.  *Walden*, 134 S. Ct. at 1122 ("our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there").  The shooting occurred in the West Bank, not the United States.  In any event, Plaintiffs acknowledge that "[t]he victims of the attack were all Israeli residents."  Opp. at 43.

Second, this case does not belong here because there is no federal interest in adjudicating Plaintiffs' claims in a U.S. court.  It is a case involving a local police action in the Palestinian town of Nablus in which Israeli intruders were shot.  The Israeli authorities have exercised

criminal jurisdiction.  *See* Opp. at 41 ("Israel arrested and initiated criminal proceeding against the officers involved in the April 2011 attack").  Plaintiffs, Israeli residents, have not shown that they cannot bring their claims in Israel.  In fact, in arguing for the application of Israeli law to their non-federal claims, Plaintiffs argue that "Israel's interest" in the lawsuit is "paramount" to that of the United States.  *Id.* at 43.

Plaintiffs' Anti-Terrorism Act claim rests on an overbroad view of what constitutes terrorism and injury for purposes of the federal statute.  As a statute with extraterritorial scope, it must be construed narrowly.   *See* DE 13-1, Mem. ("Mot.")  at 26-27.  Under Plaintiffs' formulation of terrorism, any act of violence between Palestinians and Israelis constitutes "international terrorism," and liability for such acts should be decided by U.S. courts if anyone with U.S. nationality – even though not even present at the time of the act – can claim emotional injury.  In recent years, the Supreme Court has made clear in decision after decision that it rejects such expansive interpretations of federal court jurisdiction.[1]  Here, the U.S. has no interest in deciding liability for what happened in Nablus the night of April 24, 2011.

## ARGUMENT

## I.    THIS LAWSUIT MUST BE DISMISSED BECAUSE THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER THE PA

### A.    Like All Non-Sovereign Foreign Defendants, the PA Has Due Process Rights

In the PA's motion to dismiss, it set out the new "essentially at home" standard for the exercise of general personal jurisdiction established by *Daimler*, 134 S. Ct. 746, and *Goodyear*

---

[1] In addition to *Daimler*, 134 S. Ct. 746, which limited the exercise of general personal jurisdiction over foreign defendants, the Supreme Court recently decided *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), which limited the exercise of jurisdiction over human rights claims brought by non-U.S. nationals.  In addition, the Court narrowly construed the Torture Victim Protection Act in *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012), and earlier this month held that the Chemical Weapons Convention Implementation Act should not be interpreted to federalize local crimes.  *Bond v. United States*, 134 S. Ct. 2077 (June 2, 2014).

*Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011), and explained why

Plaintiffs could not meet that test.  *See* Mot. at 5-17.  Unable to establish that the PA is

"essentially at home" in the United States, Plaintiffs instead contend that *Daimler* is "not

applicable to this case" because "the PA, as a non-sovereign foreign government, has no due

process rights, [and] the Court may [therefore] properly exercise personal jurisdiction over the

PA without analyzing its contacts with the United States."  Opp. at 21; *see also id.* at 21-26.

Plaintiffs argue that because foreign states and States of the Union do not enjoy due process, the

PA should not either.  *Id.* at 21-24.  Plaintiffs' reliance on cases involving foreign states and

States of the Union, however, is entirely misplaced.  These entities enjoy a sovereign status and

numerous protections associated with that status (including extensive immunity from suit) that

the PA and other non-sovereign foreign entities do not enjoy.[2]

Plaintiffs principally rely on *Price v. Socialist People's Libyan Arab Jamahiriya*, 294

F.3d 82 (D.C. Cir. 2002), which held that foreign states do not enjoy Fifth Amendment due

process.  Under the Constitution's balance of powers between states and the federal government,

states cannot invoke Fifth Amendment due process to challenge acts of Congress.  *South

Carolina v. Katzenbach*, 383 U.S. 301 (1966) (rejecting South Carolina's due process challenge

to the Voting Rights Act of 1965).  *Price* held that it "would be highly incongruous to afford

greater Fifth Amendment rights to foreign nations, who are entirely alien to our constitutional

system, than are afforded to the states, who help make up the very fabric of that system."  294

F.3d at 96.  Plaintiffs then argue that the PA, like foreign nations, should not enjoy "greater

constitutional safeguards than those afforded to the states."  Opp. at 23.

---

[2] The PA views itself as the government of the State of Palestine, as do many countries throughout the world.   To date, however, Palestine has not been recognized as a foreign state for U.S. law purposes.

*Price* is readily distinguishable.  Jurisdiction over foreign states is governed by the Foreign Sovereign Immunities Act ("FSIA"), which does not govern jurisdiction over the PA. *See* Mot. at 20-21.  Moreover, foreign states have a special status because they are treated as "juridical equals" of one another and, if jurisdiction is wrongly exercised over them, they "have available to them a panoply of mechanisms in the international arena through which to seek vindication or redress."  *Price*, 294 F.3d at 98.  Under U.S. law, the PA does not currently enjoy status as a foreign state and lacks the protections available to foreign states, including the general immunity from suit provided by the FSIA.  Equally flawed is Plaintiffs' effort to compare the PA to States of the Union.  The exercise of federal power over the States of the Union is governed by the U.S. Constitution, which treats them as "coequal sovereigns in a federal system."  Opp. at 27 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291-92 (1980)).  Among the Constitutional safeguards provided to States, which the PA does not enjoy, is Eleventh Amendment immunity from suit.

Plaintiffs cite (Opp. at 24-25) a few older cases extending *Price*'s rationale to Palestinian organizations.  *See Mendelsohn v. Meese*, 695 F. Supp. 1474, 1480-81 (S.D.N.Y. 1988) (stating that the PLO, like a foreign state, "lies outside the structure of the Union"); *Palestine Information Office v. Shultz*, 674 F. Supp. 910, 919 (D.D.C. 1987) (holding that the Palestine Information Office "ha[d] no due process right under our Constitution or Laws" because "[i]f the States of the Union have no due process rights, then a 'foreign mission' qua 'foreign mission' surely can have none").[3]   Those cases are not good law in this jurisdiction.  *See GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805 (D.C. Cir. 2012).   In *GSS Group*, the plaintiffs argued that

---

[3] On appeal, the D.C. Circuit characterized the district court's conclusion that the Palestine Information Office's "rights were not violated because 'a "foreign mission" qua "foreign mission"' cannot have any due process rights" as "circular," and instead held that the Office had received adequate due process. *Palestine Information Office v. Shultz*, 853 F.2d 932, 942 (D.C. Cir. 1988).

1434812.1

*Price* applied to a Liberian National Port Authority, because state-owned corporations are just as "alien to our constitutional system" as the sovereigns that own them. *Id.* at 813. The Court of Appeals held that "[b]inding precedent forecloses GSS Group's argument." All foreign entities are "alien to our constitutional system," and yet under Supreme Court and D.C. Circuit precedent, foreign defendants receive "the full measure of due process protection." *Id.* at 813-14; *see also First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 747-748 (5th Cir. 2012) (rejecting as inconsistent with "current caselaw" the proposition that "foreign entities that are neither present nor have property in the United States are not entitled to due process protections"). And, as noted in the PA's opening brief (at p. 20), every court that has decided whether to exercise personal jurisdiction over the PA has applied the due process standard.

> B.    Plaintiffs Fail in Their Other Attempts to Distinguish *Daimler*

In addition to their due process argument, Plaintiffs make three other arguments in an effort to distinguish *Daimler*, each of which is negated by the case law.

First, Plaintiffs argue that *Daimler* involved Fourteenth Amendment due process rights, which Plaintiffs claim are less "flexible" than the Fifth Amendment rights at issue here. Opp. at 26-29. Plaintiffs are wrong. The *Daimler/Goodyear* "essentially at home" standard for general personal jurisdiction applies in cases involving Fifth Amendment due process. *GSS Group Ltd.*, 680 F.3d at 816-17 (treating *Goodyear*'s minimum contacts test as applicable in case involving Fifth Amendment due process); *Simon v. Republic of Hungary*, No. 10-cv-1770, 2014 U.S. Dist. LEXIS 64240, at *132-40 (D.D.C. May 9, 2014) (applying *Daimler* and *Goodyear* in a case involving Fifth Amendment due process); *Abelesz v. OTP Bank*, 692 F.3d 638, 656 (7th Cir. 2012) ("The issue under the Due Process Clauses of the Fifth and Fourteenth Amendments is whether the contacts "are so 'continuous and systematic' as to render [defendants] essentially at home in the forum.") (quoting *Goodyear*, 131 S. Ct. at 2851); *Refco Group Ltd., LLC v. Opinion*

*& Order Cantor Fitzgerald, L.P.*, No. 13-cv-1654, 2014 U.S. Dist. LEXIS 79708, at *21-23

(S.D.N.Y. June 10, 2014) (applying *Goodyear* and *Daimler* in a Fifth Amendment due process

case).

"[B]ecause the language of the Fifth Amendment's due process clause is identical to that

of the Fourteenth Amendment's due process clause, the same general principles guide the

minimum contacts analysis." *SEC v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013).  The

"principal difference is that under the Fifth Amendment the court can consider the defendant's

contacts throughout the United States, while under the Fourteenth Amendment only contacts

with the forum state may be considered." *In re Terrorist Attacks on September 11, 2001*, 392 F.

Supp. 2d 539, 558 (S.D.N.Y. 2005) (internal citation and quotation omitted); *see also Carrier*

*Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449-50 (6th Cir. 2012) (the Fifth Amendment minimum

contacts inquiry "parallels" that under the Fourteenth Amendment); *De Manez v. Bridgestone*

*Firestone N. Am. Tire, LLC*, 533 F.3d 578, 586 (7th Cir. 2008) ("What the [Supreme] Court said

about the Fourteenth Amendment and state-court jurisdiction applies with equal force to the Due

Process Clause of the Fifth Amendment, for purposes of federal-court jurisdiction.").

Second, Plaintiffs argue that defendants in civil terrorism cases should enjoy fewer due

process rights.  Of course, that is not the rule.  Courts in this jurisdiction apply the same

minimum contacts due process analysis in terrorism cases that they apply in other civil cases.

*See*, *e.g.*, *Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 111-15 (D.D.C. 2006);

*Sisso v. Islamic Rep. of Iran*, 448 F. Supp. 2d 76, 87 (D.D.C. 2006).  Indeed, in the multi-district

Anti-Terrorism Act litigation arising from 9/11, scores of defendants were dismissed for lack of

personal jurisdiction applying a traditional due process analysis.  *See O'Neill v. Asat Trust Reg.*

*(In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659 (2d Cir. 2013); *Burnett v. Al Baraka*

*Inv. & Dev. Corp. (In re Terrorist Attacks on Sept. 11, 2001)*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005).[4]  And, as noted, Plaintiffs have not even alleged an act of terrorism.

Third, Plaintiffs next argue that *Daimler* applies only to corporations engaged in international commerce.  Opp. at 30-31.  According to Plaintiffs, the reasoning of *Daimler* "has no place in deciding whether to exercise jurisdiction over entities engaged in terrorism rather than commerce."  *Id.*  Plaintiffs fail to understand the *Daimler* lawsuit.  In *Daimler*, the plaintiffs alleged that Daimler's subsidiary in Argentina "collaborated with [Argentinian] state security forces to kidnap, detain, torture, and kill . . . plaintiffs" and their relatives during the military dictatorship in place there from 1976 through 1983, a period known as Argentina's "Dirty War." 134 S. Ct. at 751.  The lawsuit had nothing whatsoever to do with Daimler's involvement in international commerce.  Nor has the Supreme Court shown any special solicitude for corporate defendants in its personal jurisdiction jurisprudence.  *See*, *e.g.*, *Walden*, 134 S. Ct. at 1121-23 ("These same [due process] principles apply when intentional torts are involved.").

In sum, Plaintiffs' efforts to distinguish *Daimler* must be rejected.  The due process limits on the exercise of personal jurisdiction are the same regardless of who is being sued, whether it is Fifth or Fourteenth Amendment due process, and the nature of the plaintiff's claims.  Plaintiffs cannot escape *Daimler*.

---

[4] Equally misguided are Plaintiffs' musings that the U.S. would not be able to prosecute individuals on the FBI's most-wanted terrorist list if *Daimler* applies to the Fifth Amendment.  Opp. at 28 n.15. Personal jurisdiction over individual criminal defendants is governed by separate rules.  *Daimler* did not curtail the reach of U.S. criminal jurisdiction over foreign nationals.  This is why Plaintiffs' reliance on *United States v. Yousef*, 327 F.3d 56, 111-12 (2d Cir. 2003), and *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011), *see* Opp. at 36 & 38, is misplaced.

1434812.1

C.      Plaintiffs Fail to Make Out a Prima Facie Case for the Exercise of General
        Personal Jurisdiction

Alternatively, Plaintiffs assert that this Court may exercise jurisdiction over the PA

because "the PA has sufficient contacts in the United States to warrant the exercise of personal

jurisdiction."  Opp. at 31.  Proceeding from their erroneous position that *Daimler* does not apply

to the PA, Plaintiffs do not even attempt to establish that the PA is "essentially at home" in the

United States.  Instead, Plaintiffs rely on pre-*Daimler* cases in which the courts considered the

PA's contacts under the now-retired "continuous and systematic contacts" test for general

personal jurisdiction and imputed the contacts of the PLO (principally the Washington, D.C.

United States mission office) to the PA.  *See id.*  Because *Daimler*'s "essentially at home" test is

controlling and Plaintiffs cannot make out even a prima facie case that they meet it, the PA's

Rule 12(b)(2) motion must be granted.  *See* Mot. at 5-17.

1.      Pre-Daimler *Personal Jurisdiction Cases Involving the PA and Decades-
        Old Contacts with the U.S. Are Irrelevant to This Court's Exercise of
        Personal Jurisdiction*

Plaintiffs attempt to shift the burden of proof to the PA, claiming it is the PA's burden to

prove that contacts "discussed in" decades-old cases against the PA no longer exist.  Opp. at 31

("[t]he PA has offered no argument that, at the time the complaint in this case was filed, the

contacts discussed in, *inter alia*, *Sokolow*, *Klieman*, *Ungar*, and *Biton* had in any way ceased,

and it bears the burden of doing so").  To the contrary, it is Plaintiffs' burden to make a prima

facie showing that the PA is "essentially at home" in the United States.  *See* Mot. at 2.   In any

event, the most recent of the four cases identified by Plaintiffs (*Sokolow*) was filed in 2004, a

decade ago.  Any jurisdictional facts relevant to the exercise of personal jurisdiction in those

cases are irrelevant to this Court's exercise of personal jurisdiction in 2014.

8

Notably, the plaintiffs in *Sokolow* tried the same argument as Plaintiffs here, asking the Court to treat jurisdictional contacts as found in *Klieman*, *Ungar*, and *Biton* as established for purposes of *Sokolow*.  The court rejected that argument, holding that "[p]ersonal jurisdiction must be determined on a case-by-case basis because it is dependent upon the defendants' contacts with the State at the time the lawsuit was commenced."  *Sokolow v. PLO*, 583 F. Supp. 2d 451, 460 (S.D.N.Y. 2008).  The law in this jurisdiction is equally clear that "the Court must resolve personal jurisdiction issues 'on a case-by-case basis,'" *Cellutech v. Centennial Cellular Corp.*, 871 F. Supp. 46, 49 (D.D.C. 1994), and jurisdictional facts must be assessed as they existed at the time the "action was commenced."  *Roz Trading Ltd. v. Zeromax Group, Inc.*, 517 F. Supp. 2d 377, 384 (D.D.C. 2007).

In any event, those cases treated supposedly continuous and systematic contacts – namely the Washington, D.C. office of the PLO Mission to the United States – as sufficient for the exercise of general personal jurisdiction.  *See, e.g.*, *Sokolow v. PLO*, No. 1:04cv397, 2011 U.S. Dist. Lexis 36022, at *14-15 (S.D.N.Y. Mar. 30, 2011).  They did not exercise personal jurisdiction using the new "essentially at home" test, which is the test this Court must apply.  *See Simon*, 2014 U.S. Dist. LEXIS 64240, at *137-38 ("*Daimler* gave clear instructions regarding the inquiry a court must undertake in determining whether general jurisdiction is appropriate:  the test is not whether a foreign [defendant's] in-forum contacts can be said to be in some sense continuous and systematic, it is whether that [defendant]'s affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.") (internal citation and quotation marks omitted).

        2.     *The Contacts Alleged by Plaintiffs Are Not Even PA Contacts*

The only recent contacts Plaintiffs can identify are those of the General Delegation of the PLO to the United States (the D.C. office) and the governmental and public relations activities of

1434812.1

the head of that office, Maen Areikat.  *See* DE 16-22 (Weber Decl.).  Plaintiffs have no factual

basis for characterizing the General Delegation of the PLO to the United States as the PA, or its

office as a PA office.  Both Ambassador Areikat's Declaration, DE 13-2, and the 2009-2013

Foreign Agent Registration Act ("FARA") statements for the PLO's Washington, D.C. office

(DE 16-32 through DE 16-41) flatly contradict Plaintiffs' unsubstantiated claim, as do the 2012

FARA statements for consultant Bell Pottinger USA, which lists the foreign principal as the

General Delegation of the PLO to the United States and describes services provided to the PLO's

General Delegation.  DE 16-42 at 5; DE 16-43 at 2, 4-5.

Plaintiffs submit a declaration from former Israel Defense Forces advisor Arieh Spitzen

on the relationship between the PA and PLO.  DE 16-1.  Notably, Mr. Spitzen does not

characterize the PA and PLO as alter egos, such that the activities of the PLO office could be

imputed to the PA.  *See id.* ¶ 4 (explaining that the PLO is a "political organization and the

representative of the Palestinians in the Oslo Accords" and the PA was created to serve as "the

governing authority over parts of the West Bank and the Gaza Strip pursuant to the Oslo

Accords"); *id.* ¶ 5 ("Palestinian officials are generally careful about distinguishing between the

PA and PLO").  Mr. Spitzen does not characterize the Washington, D.C. office of the PLO as a

PA office, but instead asserts that Ambassador Areikat serves as the PA's representative in the

United States.  *Id.* ¶ 7.  The various interviews and appearances Spitzen cites, however, show no

such thing.  At most they show that reporters occasionally ask Areikat about the PA.  *See id.*

> ### 3. *In Any Event, the Contacts Alleged by Plaintiffs Do Not Make Out a Prima Facie Case for the Exercise of General Personal Jurisdiction*

Yet, even if the Court were to treat the Washington, D.C. office of the General

Delegation of the PLO to the United States as a PA office, the alleged U.S. activities of the PA

would still be proportionally insignificant compared to its activities outside the U.S., including

its paradigmatic home in the West Bank.  *See* Mot. at 5-17.  Under the "essentially at home test,"

the presence of one local office in the forum does not make a defendant subject to general

personal jurisdiction.  *See Simon*, 2014 U.S. Dist. LEXIS 64240, at *159 ("In *Daimler*, the

Supreme Court found that a physical presence consisting of multiple offices and substantial sales

in the selected forum was insufficient to support general jurisdiction.").  It is only the

"exceptional case" where a court can exercise general personal jurisdiction over a defendant in a

forum that is not its principal place of business or place of incorporation.  *See* Mot. at 6-7.

Indeed, *Daimler* is "the final death knell for" federal cases premised on general personal

jurisdiction when the defendant is at home outside the forum.[5]

Plaintiffs rely extensively on speaking appearances by Areikat.  *See* Opp. at 32-33.  As

set forth in the PA's opening brief, much of this speech is covered by the government contacts

exception, Mot. at 15, which contrary to Plaintiffs' claim, Opp. at 33-34, does indeed apply to

"foreigners."  *See Alkanani v. Aegis Def. Servs.*, LLC, 976 F. Supp. 2d 13, 25 (D.D.C. 2014)

(applying exception to a UK corporation).  In any event, Mr. Areikat's speaking engagements do

not make the PA "essentially at home" in the United States under *Daimler*.  And Plaintiffs do not

even attempt to argue that they do.  Plaintiffs conclude their general personal jurisdiction

argument by arguing that "through these varied activities in the United States, the PA

intentionally directs its efforts toward and in the United States."  Opp. at 34.  Not only is this

factually inaccurate in that it improperly conflates the PA and the PLO, but it is also not the test

---

[5] Ernesto J. Sanchez, *U.S. Supreme Court Restricts Personal Jurisdiction Over Foreign Corporations*, 82 U.S.L.W. 1588 (Apr. 22, 2014); *see also* Perry Cooper, *Daimler Ruling Could Mean Fewer Defendants Shoulder Greater Risk in Asbestos Cases*, 82 U.S.L.W. 1597 (Apr. 22, 2014) (concluding that under *Daimler*, plaintiffs can sue under a theory of general personal jurisdiction only where the defendant is headquartered or where the defendant has its principal place of business).

for general personal jurisdiction.  As discussed below, it is not even the test for specific jurisdiction.

      D.     <u>The Court Cannot Exercise Specific Personal Jurisdiction Over the PA</u>

      Plaintiffs' argument for the exercise of specific jurisdiction can be readily rejected.  *See Opp.* at 34-39.  The alleged tortious conduct that gave rise to Plaintiffs' claims lacks the "substantial connection" to the forum required by *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Specific or "case-linked" jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (*i.e.*, an activity or an occurrence *that takes place in the forum* State and is therefore subject to the State's regulation)."  *Id.* at 1122 n.6 (internal quotation marks omitted) (emphasis added).   Moreover, specific jurisdiction requires a causal relationship between the defendant's in-forum conduct and the plaintiff's injury.  *See Absolute Activist Master Value Fund, Ltd. v. Ficeto*, No. 09-cv-8862, 2013 U.S. Dist. LEXIS 45883, at *37 (S.D.N.Y. Mar. 28, 2013); *In re Cathode Ray Tube Antitrust Litig.*, No. 07-cv-5944-SC, 2014 U.S. Dist. LEXIS 78902, at *102 (N.D. Cal. June 9, 2014).  Plaintiffs cannot identity any U.S.-based activity that caused their alleged injuries.

      Citing *Mwani v. Bin Laden*, 417 F.3d 1, 12-13 (D.C. Cir. 2005), Plaintiffs contend that they need not establish that wrongful conduct occurred in the U.S., but need only establish that the PA "purposefully directed" its conduct at U.S. residents.  Opp. at 35; *see also id.* at 36. There are at least three glaring flaws with this analysis.  First, "[t]he victims of the attack were all Israeli residents."  *Id.* at 43.  Second, *Mwani* involved liability for the bombing of the U.S. embassy in Nairobi and the complaint also "described an ongoing conspiracy to attack the United States, with overt acts occurring within this country's borders," including "the 1993 World Trade Center bombing, as well as to the plot to bomb the United Nations, Federal Plaza, and the Lincoln and Holland Tunnels in New York." 417 F.3d at 13.  Unlike *Mwani*, this case does not

1434812.1

involve an attack on a U.S. installation or an ongoing conspiracy to carry out attacks within U.S. borders.  Third, *Walden* makes clear that contact with forum residents outside the forum does not give rise to specific personal jurisdiction.  134 S. Ct. at 1122 ("our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there").  To the extent *Mwani* provides otherwise, it is no longer good law. But, again, the present case does not even involve contact with a U.S. resident.

Plaintiffs' reliance on the "effects" test for specific jurisdiction set out in *Calder v. Jones*, 465 U.S. 783 (1984), is equally puzzling.  *See* Opp. at 36.  *Calder* held that a court in California could exercise specific personal jurisdiction over a libel suit against the National Enquirer because "California is the focal point both of the story and of the harm suffered."  464 U.S. at 789.  In addition to the fact that the National Enquirer had its largest circulation in California (*id.* at 785), the Court found that:  (1) the allegedly libelous story concerned the California activities of a California resident; (2) it impugned the professionalism of an entertainer whose television career was centered in California; (3) the article was drawn from California sources; and (4) the "brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."  *Id.* at 788-89.   In *Walden*, the Supreme Court took pains to limit *Calder*, emphasizing that the strength of the connection between the National Enquirer and California was "largely a function of the nature of the libel tort," which centers on identifying a reputational injury, which in *Calder* was focused in California.  134 S. Ct. at 1123-24; *see also Daimler*, 134 S. Ct. at 762 (requiring that the "principal impact" be in the forum).  Here, the U.S. is not the focal point of Plaintiffs' alleged injuries, and the principal impact was not felt here.

13

Plaintiffs' contention that this Court can exercise specific jurisdiction because they are U.S. nationals (Opp. at 37) is likewise contrary to *Walden*. *See* 134 S. Ct. at 1123 ("[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State'").

In the absence of any substantial connection between the United States and Plaintiffs' claims, the declaration of Jeffrey Addicott that the PA supposedly has a policy of encouraging terrorism to influence U.S. public opinion and policy is entirely irrelevant to the exercise of specific personal jurisdiction here. *See* Opp. at 35; DE 16-58 (Addicott Decl.).[6]  In addition, Addicott's declaration is based on claims about violence during the 2000-2004 Second Intifada and Yasser Arafat, who died nearly a decade ago, and has no bearing on the isolated 2011 shooting incident at issue here. *See, e.g.*, DE 16-58 at ¶¶ 5, 6, 10, 13, 16.  Though Addicott asserts that "[t]his pattern of behavior by the PA continues," *id.* at ¶ 5, he provides no substantiation for that claim.  Addicott cites a 2009 statement by President Abbas that he "will not allow anybody to start a new *intifada*," *id.* at ¶ 14, and a 2013 Jerusalem Post interview in which Michele Bachmann complained that the PA sought the release of Palestinians imprisoned by the Israelis, *id.* at ¶ 12.  President Abbas's commitment to nonviolence and efforts to seek the release of long-detained Palestinian prisoners do not support Addicott's bizarre claim that, in 2011, the PA used terrorism to influence U.S. foreign policy.

---

[6]  Addicott is a professor at St. Mary's University School of Law in San Antonio, Texas.  His 7-page Curriculum Vitae (DE 16-59) does not reflect any expertise on the Palestinian Authority.   But even leaving aside his lack of expertise, his views on the PA's state of mind (DE 16-58) is an improper subject for expert opinion.  *United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006); *Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 285 (E.D.N.Y. 2011) (holding that expert opinions in an ATA case "as to the state of mind, intent, or motive of a government, a charitable entity, or a person…do not contain relevant expert evidence."); 4 *Weinstein's Federal Evidence* § 702.03[3] (2d ed. 2013).

1434812.1

## II.      THE PA'S RULE 12(b)(3) AND RULE 12(b)(5) MOTIONS MUST BE GRANTED

Plaintiffs claim that venue is proper under 18 U.S.C. § 2334 because "Plaintiffs served the PA in the District of Columbia."  Opp. at 40.  In fact, they did not.  They served Maen Areikat, who is not the PA's agent for service of process.  *See* Mot. at 21-22; DE 13-2 at ¶ 9.

With respect to the PA's Rule 12(b)(5) ground for dismissal, Plaintiffs assert that the PA was served under Rule 4(h) by serving "Ambassador Maen Rashid Areikat at his office in Washington, D.C."  Opp. at 39.   Rule 4(h) governs service on a "domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name."  Fed. R. Civ. P. 4(h).  The Complaint does not allege the PA falls into any of those categories.  Instead, it alleges that the PA is a "non-sovereign government."  DE 1 ¶ 3. Accordingly, Rule 4(h) does not apply.

In any event, the PA was not properly served under Rule 4(h).  Under that Rule, a corporation, partnership or unincorporated association may be served by delivering a copy of the summons and of the complaint to an "officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B). In their Opposition, Plaintiffs claim that "[b]ecause…Mr. Areikat serves as chief representative of the PA in the United States and the head of the PA's Washington, D.C. office, he is a valid agent for service of process."  Opp. at 39.  Plaintiffs' claim is unsubstantiated and contradicted by Areikat's sworn declaration, DE 13-2, and by Plaintiffs' own exhibits.  *See* DE 16-32 through DE 16-41 (FARA reports for the PLO's Washington, D.C. office).[7]

---

[7] Cases filed over a decade ago finding that one of Areikat's predecessor's was an agent of the PA, *see* Opp. at 40-41, have no bearing on Areikat's relationship to the PA at the time this lawsuit was filed.

**III.     PLAINTIFFS' CLAIMS MUST OTHERWISE BE DISMISSED**

A.     <u>Plaintiffs Fail to State a Claim for Relief Under the Anti-Terrorism Act</u>

1.     *The Complaint Fails to Allege a Cognizable Injury to Yisrael Safra*

Plaintiffs' sole federal law claim is brought under the civil liability provision of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), which allows recovery where a "national of the United States" is injured "by reason of an act of international terrorism." As set forth in the PA's opening brief, Yisrael Safra is not a proper plaintiff. Mot. at 23-27.

Plaintiffs rely on four cases to argue that U.S. nationals can recover for emotional injuries arising from an alleged terror attack on a family member. Opp. at 10-11. But in those cases, as explained in the PA's motion to dismiss (Mot. at 24), the courts erroneously conflated the language used by Congress in the ATA ("injured in his or her person") with a term that has a distinct meaning in the law ("personal injury"). Again, had Congress intended to provide a cause of action to a U.S. national who had suffered a "personal injury," it would have done so. *See id.*

With respect to the PA's argument that only those immediate family members present at the attack can bring a claim for their own emotional injuries, *id.* at 24-25, Plaintiffs acknowledge the general rule that there is a presence requirement for emotional distress claims, but argue that there is an exception to this requirement for terrorist attacks, which are inherently extreme and outrageous. Opp. at 11-12. Plaintiffs cite three cases adopting a "terrorism exception" to the presence requirement, all three of which are readily distinguishable because they involve actual terrorist attacks on U.S. targets. *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51 (D.D.C. 2010), "arises out of the October 23, 1983, bombing of the United States Marine barracks in Beirut, Lebanon," where "a suicide bomber murdered 241 American military servicemen in the most deadly state-sponsored terrorist attack upon Americans until the tragic attacks on September 11, 2001." *Id.* at 55. *Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 86-87

16

(D.D.C. 2010), involves the same 1983 bombing of the U.S. Marine barracks.  The third case, *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 57 (D.D.C. 2006), involves the 1996 bombing of Khobar Towers in Saudi Arabia in which nineteen U.S. Air Force personnel were killed in the explosion, and hundreds of others were injured.  This case, in contrast, involves two Israeli trespassers who were shot by a security guard.  Though a difficult situation for the Safra family, it does not fall within any terrorism exception created by the cases Plaintiffs cite.

Plaintiffs cite an additional three cases from other jurisdictions for the proposition that "[c]ases under the ATA have routinely allowed claims of emotional distress by family members who were not present at the terrorist attack."  Opp. at 13 (citing *Lelchook v. Commerzbank*, No. 10-cv-5795, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011), *Knox v. PLO*, 442 F. Supp. 2d 62, 80 (S.D.N.Y. 2006), and *Estates of Ungar v. Palestinian Auth.*, 304 F. Supp. 2d 232, 276-77 (D.R.I. 2004)).  All three cases are inapposite because they address who can sue as an "heir" or "survivor" of a U.S. national injured in an attack.  *See, e.g.*, *Knox*, 442 F. Supp. 2d at 75 ("the term 'survivors' as used in § 2333(a) includes parents and grown siblings of United States nationals killed by an act of international terrorism.").  None of these cases establish that parents of a U.S. national injured but not killed by an alleged act of terrorism is entitled to bring claims under the ATA.

Finally, Plaintiffs fail to address the PA's argument that the presumption against extraterritoriality operates to require the Court to construe the ATA narrowly.  *See* Mot. at 26-27. Because Yisrael Safra was not "injured in [his] person" as the statute expressly requires, his ATA claim must be dismissed for failure to state a claim.

17

### 2. *The Complaint Fails to Adequately Plead an Act of International Terrorism*

This is not a terrorism case.  The ATA defines "international terrorism" as activities that "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State." 18 U.S.C. § 2331(1)(A).  Plaintiffs have not adequately alleged any conduct by the PA that could be characterized as involving "violent acts or acts dangerous to human life."  Plaintiffs tacitly concede that they have pled no "violent acts" by the PA, but argue that posting Saabneh at Joseph's Tomb was an act "dangerous to human life."  The Complaint, however, does not allege that Saabneh had any record of injuring or killing any Israelis — nor, significantly, does the Complaint even allege that he did so in the incident at issue in this case.

To constitute an act of international terrorism, the act must also "appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping."  18 U.S.C. § 2331(1)(B).  The first prong applies to the violent act that allegedly injured the U.S. national.  Here, that is the shooting of Yitzhak and Natan Safra, not alleged conduct of the PA that long predated the shooting.  Regardless, as the PA argued in its motion to dismiss, the shooting has none of the hallmarks of a terrorist attack (such as a planned attack designed to inflict casualties on large numbers of civilians), Plaintiffs have not alleged that the State of Israel or the United States has characterized the shooting as an act of terrorism, and the Complaint fails to adequately allege facts supporting Plaintiffs' claim that the Safras' shooting appears to be intended to intimidate or coerce a civilian population or government.  Mot. at 28.

Plaintiffs nonetheless assert that the PA "knowingly armed a twice-convicted terrorist with an automatic weapon," "had a policy and practice of inciting and encouraging terrorism against Jewish and Israeli civilians," and "ratified the terrorist attack by publicly blaming the unarmed victims."  Opp. at 9 (citing DE 1 ¶¶ 21-35, 36-42, 43-45).   But the allegations in the Complaint, including this relatively brief sentence, do not support Plaintiffs' characterization of Saabneh as a "twice-convicted terrorist."  Mot. at 35.

Other key allegations are inconsistent with Spitzen's declaration.  Spitzen declares under oath:  "Research of Israeli Military Court records indicates that on May 22, 2013, the State of Israel arrested three of the PA security forces employees involved in the shooting — Turki Diab Turki Zoara (ID No 411365570); Noaf Fahed Noaf Bani Oudeh (ID No. 85229035); and Wael Hussein Mohamed Daoud (ID No. 852329440)."  DE 16-1 ¶ 16.  The Complaint, however, names none of these men as the PA employees involved in the Safras' shooting.  *See generally* DE 1.

Other factual details are similarly missing from the Complaint.  The allegations that the PA had a policy and practice of inciting terrorist attacks on Jewish and Israeli civilians are highly conclusory and do not identify with any specificity an actual "persistent and widespread" or "permanent and well settled" custom that specifically led to the Safras' shooting.  Mot. at 33-34. Likewise, the Complaint fails to allege the contents of the actual statement Plaintiffs claim constituted a ratification of the shooting.  *Id*. at 34.  Moreover, the Complaint fails to tie the allegations to a time period relevant to the Safras' shooting.  *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 560 (E.D.N.Y. 2012) (holding that the evidence proffered by an ATA plaintiff that the Arab Bank provided material support "long predated" the 2008 shooting, and therefore "has less than a shadow of weight on the issue of whether the Bank provided support to the Saudi

19

Committee with reckless knowledge that its support up to 2004 would probably result in harm to an American in 2008"). Thus, there is no factual allegation that the Safras' shooting was an act of terrorism, and Plaintiffs' ATA claim must be dismissed.

### 3. The PA Cannot Be Held Vicariously Liable for the Acts of Its Employees

For the reasons provided in the opening brief, the PA is not subject to vicarious liability under the ATA for the unauthorized acts of its employees. Mot. at 29-35. In their Opposition, Plaintiffs cannot identify a single case in which a defendant has been subject to vicarious liability under the ATA. *See* Opp. at 13-15. The PA previously addressed the three cases Plaintiffs cite (*Abecassis*, *Gill*, and *Parsons*) in its opening brief. Mot. at 30.

In its opening brief, the PA argued that assuming, *arguendo*, there is vicarious liability under the ATA, the *Monell* standard should apply. Mot. at 30-32. Plaintiffs' arguments for distinguishing *Monell* must be rejected. First, Plaintiffs argue that *Monell* does not apply because the ATA is "devoid" of "causation language." Opp. at 16. That is incorrect. Courts consistently interpret the statute's "by reason of" language, 18 U.S.C. § 2333(a), as requiring proximate cause. *See, e.g.*, *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013). Second, Plaintiffs claim that *Monell* arose out of federalism concerns with imposing liability on municipalities. Opp. at 16-17. Plaintiffs ignore that there are comparable international comity concerns with imposing treble damages on a foreign government and that the *Monell* standard has been extended to cases involving foreign governments, where federalism concerns are not present. *See* Mot. at 32. Plaintiffs also ignore another important rationale behind *Monell*, which applies with full force to the PA, namely protecting the public fisc from enormous liabilities that might result from mistakes of police officers or other public employees. *Id.* at 32.

1434812.1

Moreover, Plaintiffs fail to sufficiently allege facts supporting their claim that the PA, in 2011, had an official policy or custom of supporting terrorist attacks on civilians or that any such policy or custom was causally related to the Safras' shooting. Even taking Plaintiffs' allegations as true regarding the payments to families of deceased or incarcerated Palestinians (Opp. at 19-20), it is implausible that such payments had any causal connection to the altercation that occurred between the PA security employees at Joseph's Tomb and Yitzhak and Natan Safra and the other Israeli men who accompanied them on their unauthorized incursion into Palestinian-controlled territory.

B.       There Is No Civil Liability for Aiding and Abetting Under the ATA

In its motion to dismiss, the PA argued that there is no secondary aiding and abetting liability under the ATA. Mot. at 35-37. Only two circuit courts – the Second and Seventh Circuits – have addressed this issue and both concluded that the ATA does not permit civil claims for aiding and abetting. *Rothstein v. UBS AG*, 708 F.3d 82, 97-98 (2d Cir. 2013); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008) (*en banc*) ("*Boim III*"). Plaintiffs' claim that the Seventh Circuit in *Boim III* did "not actually decide" the issue, Opp. at 20, is wrong, as demonstrated by the very case Plaintiffs cite. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 56-57 (D.D.C. 2010) ("In *Boim III*, the Seventh Circuit concluded en banc that 'statutory silence on the subject of secondary liability means there is none…'"); *see also Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 629 (S.D. Tex. 2011) ("The [*Boim III*] court held that because Congress had not specifically provided for secondary liability under the ATA, secondary actors could not be held liable for aiding and abetting.").

To be sure, each of the district court cases cited by Plaintiffs ultimately held that an aiding and abetting claim is permissible under the ATA. But each of them reached that conclusion based, in part, on the holdings of district court cases in the Second Circuit that

preceded and were later overruled by *Rothstein*.[8]  Significantly, Plaintiffs have not cited any case

post-*Rothstein* – and the defense is aware of none – holding that the ATA permits a claim of

aiding and abetting.  Accordingly, this Court should follow the two circuit courts that have held

that the ATA does not permit civil claims for aiding and abetting.

      Plaintiffs claim that the PA aided and abetted Saabneh by arming him and posting him at

Joseph's Tomb.  However, Plaintiffs have not alleged facts demonstrating that the PA was either

aware of its role in Saabneh's alleged crimes *at the time* the PA allegedly provided assistance to

Saabneh or that the PA *knowingly* and *substantially* assisted him in his alleged crimes.

Moreover, at the time of this so-called assistance, the PA was unaware that Yitzhak and Natan

Safra and their fellow trespassers would arrive, unannounced and without authorization, at

Joseph's Tomb in the early morning hours of April 24, 2011, much less that Saabneh would end

up firing his weapon.  Accordingly, Plaintiffs have not demonstrated that the PA was aware of its

role in Saabneh's subsequent criminal acts *at the time* the PA provided its assistance and so

Claim Two should be dismissed even assuming *arguendo* there is aiding and abetting liability.

      C.    <u>Plaintiffs' Remaining Non-Federal Claims Must Be Dismissed</u>

      Plaintiffs do not dispute the PA's argument that if the ATA claims are dismissed, the

Court should decline jurisdiction over the remaining non-federal torts claims.  Mot. at 37; Opp.

at 40-43.  But even if the Court were to find that Plaintiffs had stated an ATA claim, their non-

federal claims should still be dismissed as time-barred or for failure to state a claim.

---

[8] *See Wultz*, 755 F. Supp. 2d at 56 (citing *Linde v. Arab Bank*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005); *Stutts v. De Dietrich Group*, No. 03-cv-4058, 2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. 2006); and *Strauss v. Credit Lyonnais, S.A.*, No. 06-cv-702, 2006 U.S. Dist. LEXIS 72649 (E.D.N.Y. 2006)); *In re Chiquita Brands Int'l*, 690 F. Supp. 2d 1296, 1309 (S.D. Fla. 2010) (citing *Linde*, *Stutts*, *Strauss*, and *Weiss v. National Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006)).

### 1.    *Plaintiffs' Battery and Assault Claims Are Time-Barred*

Plaintiffs tacitly concede that their battery and assault claims are barred by the District's one-year statute of limitations, but claim that the statute has been tolled because Israel allegedly "arrested and initiated criminal proceedings against the officers involved in the April 2011 attack on May 22, 2013, less than a year before this case was filed in this Court." Opp. at 40-41 (citing *Ward v. District of Columbia*, 494 A.2d 666 (D.C. 1985)). However, the alleged May 22, 2013 arrest(s) could not have tolled the statute because more than a year had already passed from the time the actions accrued in April 2011. In any event, *Ward* has no application to the case at bar. *See* 494 A.2d at 670-71 (tolling statute of limitations for forfeiture action brought by Corporation Counsel during pendency of criminal action brought by the U.S. Attorney against the same defendant because the "quasi-independence of the libel action and related criminal prosecution creates strong policy reasons for tolling" and "forfeiture actions and related criminal proceedings are handled administratively by separate sovereigns").[9] Thus, the Third and Fourth Claims for Battery and Assault must be dismissed as time barred.

### 2.    *Plaintiffs Fail to State a Claim for Negligence Under the Governing Law*

Plaintiffs assert that Israeli law applies to their negligence claim because "[t]he victims of the attack were all Israeli residents and Israel's interest in protecting the safety of its residents is paramount." Opp. at 43. Plaintiffs cite no authority for this proposition, and D.C.'s choice of law rules require the court to apply of the law of the forum with the most significant relationship to the dispute. In order to determine which jurisdiction has the most significant relationship, the court must "consider where the injury occurred, where the conduct causing the injury occurred,

---

[9] The heading for Section IV of Plaintiffs' argument section states that the negligence claims of all Plaintiffs and the battery and assault claims "of minor plaintiffs" should remain in the case. Opp. at 40. There are no minor plaintiffs in this lawsuit.

1434812.1

the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship is centered." *Wu v. Stomber*, No. 12-7088, 2014 U.S. App. LEXIS 9292, at *9 (D.C. Cir. May 20, 2014) (internal quotation marks omitted).  All of those factors other than Plaintiffs' alleged residence (Israel) and nationality (American) require the application of the law of the West Bank.  Because Plaintiffs tacitly admit that they have not stated a claim under the law of the West Bank, their negligence claim must be dismissed.[10]

The negligence claim must also be dismissed because the Complaint does not adequately allege that the Safras' shooting was caused by any negligence on the part of the PA.  *See* Mot. at 39.  Plaintiffs' Opposition does not directly address the PA's causation argument, *see* Opp. at 42-43, and because nothing in the Complaint adequately alleges that alleged negligence by the PA was a proximate cause of the Safras' shooting, the Fifth Claim must be dismissed for that reason as well.

## **CONCLUSION**

For the foregoing reasons, the Palestinian Authority respectfully requests the Court grant its Motion to Dismiss the Complaint with prejudice.

---

[10] Plaintiffs' complaint that the PA "has pointed to no authority on the West Bank's law of negligence," Opp. at 43, is irrelevant.  All that matters for present purposes is that Plaintiffs have concededly failed to state a claim under the governing law of the West Bank.

1434812.1

Dated: June 23, 2014    Respectfully submitted,

          /s/ Laura G. Ferguson
          Laura G. Ferguson (#433648)
          Charles F. B. McAleer, Jr. (#388681)
          Dawn E. Murphy-Johnson (#490232)
          MILLER & CHEVALIER CHARTERED
          655 15th Street, NW, Suite 900
          Washington, D.C. 20005
          (202) 626-5800 (telephone)
          (202) 626-5801 (facsimile)

          *Attorneys for Defendant The Palestinian Authority*

1434812.1